## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **REGINA SCOTT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:15-cv-00552-RDP** |
| | } | |
| **STATE OF ALABAMA DEPARTMENT** | } | |
| **OF HUMAN RESOURCES, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendants' Motion for Summary Judgment (Doc. # 52), filed November 4, 2016 by Defendants Alabama Department of Human Resources ("Ala. DHR") and Jefferson County Department of Human Resources ("Jeff. Co. DHR"). The parties have fully briefed the motion, and it is under submission. (Docs. # 53, 61, 66).

Ultimately, the undisputed evidence shows that this case arises from Plaintiff's refusal to accept the consequences of a serious mistake she made and a serious breach of her employer's policies. Plaintiff contends that Defendants (a) discriminated against her on the basis of race and/or sex by denying her various promotions, (b) discriminated against her on the basis of race and/or sex by terminating her due to conduct for which similarly situated supervisors were not terminated, (c) retaliated against her for making complaints protected under Title VII of the Civil Rights Act of 1964 ("Title VII") by assigning her a larger caseload than comparable supervisors and terminating her for pretextual reasons, and (d) created a hostile work environment through unwarranted discipline and an unlawful termination. As an initial matter, many of these claims are barred from the court's consideration because Plaintiff did not present them in her Equal

Employment Opportunity Commission ("EEOC") charge.  Moreover, and in any event, Defendants are entitled to summary judgment on all of Plaintiff's claims because she has not presented a *prima facie* case of unlawful discrimination, retaliation, or maintenance of a hostile work environment.  Alternatively, Defendants are entitled to summary judgment on Plaintiff's discriminatory termination claims because Plaintiff has not cast doubt upon their legitimate, non-discriminatory reason for terminating her.  Finally, Defendants are entitled to Eleventh Amendment immunity for Plaintiff's 42 U.S.C. § 1983 claim premised on alleged equal protection violations.

## I.      Statement of Facts[1]

### A.      Plaintiff's Employment History Before 2013

Plaintiff, an African-American female, was hired by the Walker County Department of Human Resources as a social worker in 1998.  (Docs. # 62-1; 64-1 at 1).  Plaintiff transferred to Jeff. Co. DHR in 1999.  (Doc. # 54-3 at 8).[2]  Jeff. Co. DHR promoted her from social worker to service supervisor in 2001.  (*Id.* at 2; Regina Scott Deposition ("Scott Deposition") at 19).[3]  As a service supervisor, Plaintiff monitored social workers, reviewed their work, assigned cases to

---

[1]   The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts that could be established through live testimony at trial.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2]   Some documents have only been submitted as exhibits to the pre-termination administrative hearing transcript or exhibits to a deposition.  For clarity, this Memorandum Opinion will cite the electronically-generated CM/ECF page numbers when referring to an exhibit in a deposition or hearing.  When citing the hearing or deposition transcript itself, this Opinion will refer to the transcript by name (not document number) and cite the minuscript page.

[3]   The transcript of Scott's deposition is located in Documents 54-5 and 63-1.  Plaintiff affirmed during her deposition that the promotion occurred in 2002 or 2003 (Scott Deposition at 19), but the parties do not dispute at this stage that the promotion occurred in 2001.  (*See* Docs. # 53 at 2 (Statement of Alleged Undisputed Facts ¶ 2); 61 at 2 (responding to Defendants' averments in paragraph 2 of the factual statement without disputing the date of her promotion to service supervisor)).

them, attended conferences, and coached social workers on the policies and procedures of Jeff. Co. DHR. (Scott Deposition at 19-21). Plaintiff usually supervised eight to ten social workers, each of whom were generally assigned twenty to thirty cases at a time. (*Id.* at 22-23). Plaintiff's performance appraisal scores fell within the "Meets Standards" range in August 2001 and August 2002. (Doc. # 54-2 at 92, 98). Plaintiff's supervisor placed her on an individual development plan in April 2002 because of "a lack of accurate assessments" in her case reviews, problems with her unit's mastery of the "ISP process," and her inability "to identify appropriate services and develop creative services for families and children." (*Id.* at 94-95). Plaintiff submitted a rebuttal to her 2002 performance evaluation. (*See* Doc. # 62-4 at 1-2). The rebuttal discussed mitigating factors, such as her subordinates' lack of experience, that she believed should have been considered in the performance appraisal. (*Id.*). But, in her rebuttal, Plaintiff did not complain about any incidents of discrimination. (*Id.*).

Plaintiff received a verbal warning in February 2003 about her unit's performance. (Doc. # 54-2 at 91). Nevertheless, she received a "Meets Standards" performance appraisal in July 2003. (*Id.* at 90). In August 2003, Jeff. Co. DHR's director charged Plaintiff with violating safety rules which endanger life or property and seriously violating the department's other rules. (*Id.* at 42-43). According to the charge letter, Jeff. Co. DHR obtained a "pickup order" for a child on June 9, 2003. (*Id.* at 42). Plaintiff became aware that the order had not been executed around June 30, 2003. (*Id.*). But, she took no action to ensure that the child was picked up until July 17, 2003. (*Id.*). Plaintiff accepted Jeff. Co. DHR's finding that she had violated the Rules of the State Personnel Board and waived an administrative hearing. (*Id.* at 88). Thereafter, Jeff. Co. DHR's director suspended Plaintiff for four days. (*Id.* at 86). Plaintiff's performance

appraisal in July 2004 did not meet Jeff. Co. DHR's standards, mainly due to a significant deduction for her August 2003 suspension. (*Id.* at 84-85).

Plaintiff's supervisor issued her a written warning in April 2006. (*Id.* at 79-80). That warning stated that Plaintiff's unit had closed several cases without meeting "investigative standards." (*Id.* at 79). It recounted that Plaintiff was informed of the problem during earlier conferences, and noted one case where a social worker in Plaintiff's unit failed to contact a family for three months after being assigned to a case. (*Id.*). Finally, it faulted Plaintiff for not submitting weekly day sheets for her unit. (*Id.*). Plaintiff's July 2006 performance appraisal asserted that she met Jeff. Co. DHR's standards. (*Id.* at 76). Nevertheless, Plaintiff's supervisor noted "some concerns in the quality of work performed in her unit and supervisory monitoring." (*Id.* at 78).

Plaintiff received another written warning in July 2007. (*Id.* at 73). That warning stated that Plaintiff received a call from a social worker while she was the supervisor on call in May 2007. (*Id.*). The social worker reported that "a child had marks and bruises as well as a history of marks and bruises by the step-father in the home." (*Id.*). Plaintiff instructed the social worker that she did not need to travel to the site of the reported incident. (*Id.*). According to Plaintiff's supervisor, this instruction violated Jeff. Co. DHR's on call policies because a social worker needed to travel to the site of a report if it alleged physical abuse and the abusive parent or guardian was at the site. (*Id.*). Because Plaintiff failed to instruct the social worker to go to the site, Plaintiff failed to "ensure the child's safety." (*Id.*). Plaintiff submitted a rebuttal to the warning, in which she recounted that the social worker received a report from a grandparent about a red mark on the child's buttocks. (Doc. # 62-4 at 3). The child claimed that his mother's boyfriend had spanked him. (*Id.*). The social worker found two earlier reports involving the

child on a computer database.[4]  (*Id.*).  Two of the mother's children resided with their grandparents, and the computer report did not indicate who the third child resided with.  (*Id.*).  Plaintiff and the on call social workers decided to not immediately respond to the call because bruises did not constitute abuse under Jeff. Co. DHR's "corporal punishment policy," the reported bruise was "moderate in degree," and the individual who spanked the child purportedly did so "to correct the child."  (*Id.*).  Moreover, Plaintiff claimed that she learned of the on call procedure requiring immediate response to any report of physical abuse in June 2007.  (*Id.*).  This rebuttal made no allegations of discrimination.  (*See id.* at 3-4).

Despite the July 2007 safety warning, Plaintiff's appraisal that month rated her performance at an "Exceeds Standards" level.  (Doc. # 54-2 at 69).  Plaintiff's performance reviews remained at the "Exceeds Standards" level in 2008, 2009, 2010, and 2011.  (*Id.* at 53, 58, 61, 65).  Plaintiff received another written warning in January 2012 for violating Jeff. Co. DHR's courtesy, respect, and professionalism policy.  (*Id.* at 49).  A county director overheard Plaintiff refer to a DHR manager "in a derogatory manner" that included expletives.  (*Id.*).  Plaintiff's supervisor still rated her performance at an "Exceeds Standards" level in July 2012.  (*Id.* at 46).

### B.    Plaintiff's Applications for a Promotion Between 2004 and 2013

Plaintiff became qualified for a promotion from service supervisor to program supervisor after she worked as a service supervisor for one year.  (Scott Deposition at 34).  The Alabama Personnel Department placed Plaintiff on a registry of qualified individuals for program supervisor and program specialist positions in 2004 or 2005.[5]  (*Id.* at 35-36).  Jeff. Co. DHR did

---

[4]  A wildcard search of the database used by the social worker later found an open investigation of the mother from February 2007.  (Doc. # 64-2 at 3-4).  Plaintiff stated in her rebuttal that the social worker could have provided more accurate information if the worker had more experience using Jeff. Co. DHR's databases.  (*Id.*).

[5]  The Alabama Personnel Department placed Plaintiff in Band 1 for program specialist positions in October 2006, November 2008, and February 2011.  (Doc. # 62-17 at 4, 12, 16).  It placed her in Band 1 for program supervisor positions in December 2008.  (*Id.* at 13).  Plaintiff testified during her deposition that she

not promote Plaintiff to program supervisor in March 2006 or April 2007. (Doc. # 62-17 at 2, 5). The Personnel Department certified Plaintiff for a program supervisor position in St. Clair County in November 2007, but another individual was selected for the position. (*Id.* at 7). Likewise, another individual was promoted to a program supervisor position in Cullman County in December 2007. (*Id.* at 8). Jeff. Co. DHR did not promote Plaintiff to a program supervisor position in January 2008 or September 2008. (*Id.* at 10-11, 14). Finally, Jeff. Co. DHR did not promote Plaintiff to a program specialist position in March 2011. (*Id.* at 17).

### C. Plaintiff's Job Performance in 2013

Kimberly Camp, a program supervisor for Jeff. Co. DHR, reprimanded Plaintiff on June 19, 2013 for failing to perform her job properly. (Doc. # 54-2 at 38). In April 2013, Camp asked one of Plaintiff's social workers by e-mail why a Termination of Parental Rights ("TPR") petition had not been filed by Jeff. Co. DHR for a particular child (L.J.). (*Id.*). The social worker assured Camp that the necessary paperwork for the TPR petition would be completed by May 31, 2013. (*Id.*). On May 3, 2013, a program manager directed the workers in Jeff. Co. DHR's foster care division, including Plaintiff, to complete all TPR paperwork by May 31st for children in DHR custody for more than 12 months. (*Id.*). (*See also* Scott Deposition at 85) (affirming that Plaintiff attended this meeting). On May 8th, the program manager sent the foster care staff a list of the children for whom TPR petitions needed to be completed by May 31st. (*Id.*). Plaintiff went on vacation from May 24th to June 3rd. (Doc. # 62-4 at 6). On June 6th, the program manager sent the foster care staff another e-mail directing them to submit all outstanding TPR petitions on the earlier list by the next day. (Doc. # 54-2 at 38). The social worker assigned to the L.J. case did not file the TPR paperwork until June 11th, the date of a

---

maintained her positions on the registries for the promotions from 2004 until her termination from Jeff. Co. DHR in 2014. (Scott Deposition at 197-98).

court hearing held in the case. (*Id.*). Camp reprimanded Plaintiff for failing to ensure that her employee met all deadlines. (*Id.*). The reprimand resulted in a seven-point deduction on Plaintiff's 2013 performance appraisal. (*Id.* at 39).

Plaintiff submitted a rebuttal to Camp's reprimand. (Doc. # 62-4 at 5-6). She asserted that that the social workers in her unit were carrying a higher caseload than the department's standards. (*Id.* at 5). Additionally, the foster care workers were assigned to assist neglect and abuse units three days a week. (*Id.*). With regard to the L.J. case, Plaintiff claimed that the social worker "worked diligently on the case to achieve permanency," investigated whether the child's relatives could act as guardians, and attempted to schedule meetings with Jeff. Co. DHR's legal department on multiple occasions. (*Id.* at 5-6). Plaintiff requested a meeting with the legal department on May 17th, and the assigned social worker scheduled a meeting on May 21st with a potential custodian that was cancelled at the guardian *ad litem*'s request. (*Id.* at 6). Due to her scheduled vacation, Plaintiff could not ensure that the worker filed the TPR paperwork by the May 31st deadline. (*Id.*). In her response, Plaintiff did not complain of discrimination by Camp or any other employee in Jeff. Co. DHR. (*See id.* at 5-6).

In July 2013, Camp appraised Plaintiff's performance at a "Meets Standards" level. (Doc. # 54-2 at 35). Plaintiff's "responsibility score" of 27.3 would have resulted in an "Exceeds Standards" score, but Camp deducted 7 points because of the June 2013 reprimand. (*Id.* at 35-36). Camp also stated that Plaintiff did not satisfactorily comply with Jeff. Co. DHR's rules. (*Id.* at 35) (referring to the June 2013 reprimand).

In August 2013, Angela McClintock, Jeff. Co. DHR's director, sent Plaintiff and other service supervisors in her unit an e-mail "summarizing the actions that needed to take place" for children who (1) were younger than five years' old and (2) had been under Jeff. Co. DHR's

supervision for more than one year. (Doc. # 54-3 at 60). McClintock had met with Plaintiff and another service supervisor on August 13th. (Doc. # 62-6 at 1). In the e-mail, McClintock gave directions to two other supervisors for seven cases and three cases, respectively. (*Id.* at 1-2). In contrast, McClintock gave Plaintiff directions on how to handle twenty-three cases.[6] (*Id.* at 2-3). Plaintiff has testified that her unit oversaw so many of these high-importance cases because they were reassigned cases from other units in Jeff. Co. DHR. (Scott Deposition at 225). According to Plaintiff, some cases were transferred to her unit when the department planned to file a TPR petition but decided to look for other possible placements. (*Id.*).

One case discussed in McClintock's e-mail involved minor L.B. (Doc. # 62-6 at 3). Jeff. Co. DHR had filed a TPR petition, but the child's aunt wanted L.B. to be placed at her residence. (*Id.*). This case was described as a "child death case," and the aunt previously had allowed the mother involved in the case to be alone with the child. (*Id.*). McClintock instructed Plaintiff to staff the case with employees from Jeff. Co. DHR's legal department as soon as possible "to see what viable choice we have about TPR or placing with [the] aunt." (*Id.*). McClintock was not informed of any actions taken by Plaintiff to advance the case between August 13th and September 13th.[7] (McClintock Deposition at 40).[8] The assigned social worker sent an e-mail on

---

[6] McClintock's directions to Plaintiff were quite pointed. McClintock observed that Plaintiff's unit had three cases where workers said TPR paperwork had been filed but the legal department had not received the paperwork. (Doc. # 62-6 at 2). McClintock directed Plaintiff to investigate the issue and to initiate disciplinary action if the same worker was responsible for the three cases. (*Id.*).

[7] There is some evidence in the Rule 56 record to dispute McClintock's claim that Plaintiff took no action on the L.B. case until September 13, 2013. During a pre-termination administrative hearing, Plaintiff disputed the charge that she took no action on the L.B. case between August 13, 2013 and September 13, 2013. She testified that she sent an e-mail to Lisa Jo Hill for staffing on the case around August 15th. (Doc. # 54-2 at 7) (page 25 of the hearing transcript). Plaintiff now avers that she sent an e-mail to Hill to staff the case on August 27, 2013. (*See* Doc. # 62-8) (e-mail from Plaintiff to Hill about cases that needed adoption recommendations). Although there is some dispute about whether McClintock accurately assessed Plaintiff's supervision of the L.B. case, this dispute does not concern a material fact. As explained below, Plaintiff has not shown a *prima facie* case of discriminatory termination because she has not brought a similarly situated comparator to the court's attention.

[8] A transcript of McClintock's deposition is located in Document 63-2.

September 13th asking about staffing for the case because it was set for a trial on September 23rd. (Doc. # 54-3 at 68).

Courtney Hall, an assistant director at Jeff. Co. DHR, directed Andrea McTyer, a program manager who supervised Plaintiff, to collect all delinquent medical bills held by the foster care department. (McTyer Deposition at 28-29).[9] McTyer sent her employees an e-mail directing them to submit the delinquent bills by a deadline. (*Id.* at 29). After McTyer collected all the delinquent bills submitted to her, Hall asked her if the staff had more medical bills. (*Id.*). When her employees submitted more medical bills, Hall directed McTyer to write up any employee who had submitted a medical bill following McTyer's second e-mail because they had failed to submit the bills by the first deadline. (*Id.* at 29-30). During her deposition, McTyer recalled that other employees were disciplined for failing to turn bills in on time. (*Id.* at 30). But, she could not recall whether another employee besides Plaintiff received discipline more severe than a write-up due to the late submission. (*Id.* at 30-31).

Plaintiff worked as an on call supervisor on November 28, 2013 and November 29, 2013.[10] (*See* Doc. # 54-3 at 86) (describing calls that Plaintiff received on November 29th). Plaintiff received a call from a social worker at a hospital on November 29th around 10:25 a.m. (*See* Hearing Transcript at 63).[11] The social worker informed Plaintiff that a mother had given birth to a child and had initially intended to place the child for adoption. (*Id.*). The mother changed her mind about the adoption. (*Id.*). The social worker expressed concerns that the

---

[9] A transcript of McTyer's deposition is located in Document 63-4.

[10] Plaintiff affirmed during her deposition that she was assigned to be an on call supervisor "on the weekend of the 22nd." (Scott Deposition at 113). Other Rule 56 evidence indicates that she worked as an on call supervisor on November 28th and November 29th. (*See* Doc. # 54-3 at 61, 86). This is not a material factual dispute because Plaintiff has never denied she worked as an on call supervisor in late November 2013.

[11] A transcript of the February 4, 2014 administrative hearing conducted by Jeff. Co. DHR is located in Document 54-2.

mother lacked a job or resources to supply food and diapers for the child. (*Id.*). Plaintiff assigned the report to an on call social worker, Karen Russell (*id.* at 64-65), a black female (Scott Deposition at 303-04).

Plaintiff instructed Russell "to take the information and assess the situation." (Hearing Transcript at 65). Russell travelled to Jeff. Co. DHR's office and checked the mother's history with the department. (*Id.* at 75-76). Upon finding no history of abuse or neglect in Jeff. Co. DHR's system, Russell contacted a nurse at the hospital and then called Plaintiff again. (*Id.* at 76-77). Russell and Plaintiff discussed the case. (*Id.* at 77). Russell informed Plaintiff that the mother had been a victim in an earlier Jeff. Co. DHR case and that the hospital had agreed to hold the child until the following Monday to allow further investigation. (Scott Deposition at 171-72). Plaintiff instructed Russell to write up a report. (Hearing Transcript at 77). Plaintiff did not expressly instruct Russell to travel to the hospital for a face-to-face contact with the social worker and the mother. (*Id.* at 65-66) (testifying that she did not give Russell instructions "either way" because she was an experienced social worker). Plaintiff also contacted the hospital's social worker to determine whether the social worker needed assistance from a Jeff. Co. DHR employee. (Scott Deposition at 172). The hospital's social worker stated that she did not need assistance and that "the baby was not to be discharged to anybody prior to Monday unless it was an attorney." (*Id.* at 172-73).

A Jeff. Co. DHR employee contacted the hospital the following Monday and discovered that the hospital had discharged the child. (Hearing Transcript at 88). The employee spoke to the child's mother but was unable to locate the child. (*Id.*). The employee discovered that the child had been put up for adoption after leaving the hospital. (*Id.* at 89).

### D.     The Charge Letter, Administrative Hearing, and Termination

Hall instructed McTyer to draft a disciplinary charge against Plaintiff. (McTyer Deposition at 55-56). McTyer could not recall during her deposition if Hall instructed her to write the charge after the September 2013 billing incident or after the November 2013 incident. (*Id.* at 60). McTyer did not draft a separate disciplinary letter for the TPR incident that occurred in August and September 2013; Hall directed her to add that information to the charge letter as it was being drafted. (*Id.*).

McClintock issued Plaintiff a charge letter on December 9, 2013. (Doc. # 54-3 at 60-62). First, McClintock charged Plaintiff with failing to perform her job properly and insubordination because she had failed to follow McClintock's "specific directive" to assign staff to the L.J. TPR action as soon as possible. (*Id.* at 60). According to McClintock, Plaintiff's conduct "demonstrated a lack of planning on your part as the supervisor, and it further demonstrated a failure to properly plan for a child's permanency." (*Id.*).

Second, McClintock charged Plaintiff with failure to perform her job properly because Plaintiff had approved purchase orders for medical bills that were over seven months old. (*Id.* at 61). The charge letter averred that "[t]he bills and attendant purchase order forms (1878's) were submitted without being thoroughly reviewed by you as the signing supervisor and didn't have adequate explanation as to why the bills were not paid when they were received." (*Id.* at 61). "Also, some of the invoices had incorrect dates of service that did not match the accompanying bill." (*Id.*). The charge letter explained that Plaintiff's actions harmed Jeff. Co. DHR by "creat[ing] an obstacle to promptly paying vendors." (*Id.*).

Finally, McClintock charged Plaintiff with failure to perform her job properly, violating safety rules which endanger life or property, and insubordination because she did not instruct

Russell "to go to the hospital to make a first victim contact." (*Id.* at 61). The charge claimed that "the mother had an older three year-old child that was not in her custody." (*Id.*). It further averred:

> Your failure to send the worker to make contact has resulted in the agency's inability to assess the safety of this mother and baby. It has been the practice of the [Jeff. Co. DHR] since 2005 that when the Department receives a call from a Hospital, medical professionals or Law Enforcement Agency after hours or on a weekend, the first victim contact must be made immediately. This is mandatory. Therefore, it is unacceptable that you would not instruct a worker to respond immediately in person to a call from a Hospital. You are an experienced supervisor and should know how the Department responds to weekend on-call reports from the Hospital and should provide on-call workers with clear direction regarding the appropriate type of response.

(*Id.*). The charge described the prior discipline Plaintiff received in 2003, 2006, 2007, and 2013. (*Id.* at 61-62).

Jeff. Co. DHR conducted an administrative hearing regarding the charges in February 2014, at which Plaintiff was represented by counsel. (Hearing Transcript at 1, 5). The hearing officer heard testimony from witnesses before making a recommendation of discipline to McClintock. (*Id.* at 8). At the hearing, Plaintiff testified that she asked an attorney in the legal department to assist with the L.J. case around August 15th. (*Id.* at 25). Nevertheless, she took no action on the case between August 15th and September 13th. (*Id.* at 25-26). When reviewing one of the purchase orders she approved on September 5, 2013, Plaintiff admitted that the amount on the purchase order did not correspond to the amount owed in the attached bill. (*Id.* at 39-40). She recalled that she had approved some of the purchase orders because the supervisors for other workers were not at the office when they were due. (*Id.* at 45).

Plaintiff explained that an on call supervisor received messages from Jeff. Co. DHR's answering service and dispatched workers to handle the calls as necessary. (*Id.* at 47-49). She attended on call training before her assigned on call shift in November 2013 and signed a form

confirming her duties. (*Id.* at 53, 56). The supervisor task statement form signed by Plaintiff on November 22, 2013 described the following cases that needed first victim contact:

> Supervisor will follow up with workers on-call to ensure that contact is made **with all child victims in cases with allegations of abuse/neglect where the person allegedly responsible will have access to the child prior to the next business day**. All calls from the hospital or law enforcement require immediate contact.

(Doc. # 54-6 at 140-41) (emphasis in original). During the hearing, Plaintiff insisted that Jeff. Co. DHR policy required her to send a social worker to the hospital "for cases that have allegations of abuse and neglect." (Hearing Transcript at 55). She instructed Russell to call the social worker at the hospital and, if Russell believed that she did not need to conduct an in-person examination, to "write it up" thoroughly because she was "not making contact." (*Id.* at 67-68). Plaintiff affirmed that her instructions were contrary to the task statement form she signed on November 22nd. (*Id.* at 68).

Russell, a senior social worker at Jeff. Co. DHR, testified that she never spoke with the mother before creating a report of the call from the hospital. (*Id.* at 71, 77). She conceded that she received disciplinary counseling for the incident. (*Id.* at 79-80). She relied on Plaintiff's directions when deciding to not visit the hospital, but she conceded her own responsibility as well. (*Id.* at 80).

Hall claimed that the purchase orders and medical bills submitted by Plaintiff contained several problems: (1) some bills were over seven months old; (2) no explanation was given for the tardy submission of the purchase orders; and (3) one purchase order contained an error in the service authorization date. (*Id.* at 110). He further testified that a supervisor had to confirm the accuracy of the information on a purchase order before signing it, even if he or she did not directly supervise the individual submitting the form. (*Id.* at 117).

13

McClintock recommended to the hearing officer that Plaintiff be terminated. (*Id.* at 122). She explained that termination was justified by "the progressive discipline" Plaintiff had received, the safety issues resulting from Plaintiff's failure to give proper instructions to Russell, and "the permanency concerns" resulting from her handling of TPR cases. (*Id.*). McClintock stated that Jeff. Co. DHR required employees to respond in-person to calls from first responders because most cases of severe abuse were reported by first responders, Jeff. Co. DHR needed to maintain a good relationship with first responders, and the first responders limited their calls to emergency cases. (*Id.* at 123).

On February 12, 2014, the hearing officer recommended that Plaintiff be terminated from Jeff. Co. DHR. (Doc. # 54-5 at 115-16). She found evidence to support each of the charges presented against Plaintiff. (*Id.*). She noted that Plaintiff had received "a suspension, three warnings, and a reprimand as part of the positive discipline procedure." (*Id.* at 116). She determined that Plaintiff had "failed to perform her job properly and [had] continued to be insubordinate despite the corrective action measures." (*Id.*). That day, McClintock terminated Plaintiff's employment with Jeff. Co. DHR. (*Id.* at 117). She justified the termination with the recommendation from the hearing officer. (*Id.*).

Plaintiff appealed the termination decision to the Personnel Board of the State of Alabama. (Doc. # 62-14). She denied the charges against her, claimed that termination was too severe, and requested a hearing before the Personnel Board. (*Id.*). An Administrative Law Judge ("ALJ") conducted a hearing in April 2014. (Doc. # 54-12 at 2). During the ALJ's hearing, Plaintiff testified "that in the past, the social workers and supervisors could use their own discretion to determine when an actual contact needed to be made." (*Id.* at 8). Nevertheless, she also reviewed the task statement form during the ALJ's hearing "and

acknowledged understanding there was no discretion in the policy concerning reports from hospitals." (*Id.* at 9).

The ALJ found sufficient evidence to support the termination. (*Id.* at 13). He determined that Plaintiff failed to perform her job properly and violated safety rules which endangered life or property because she did not ensure that Russell visited the hospital within 24 hours of the phone call. (*Id.* at 13-14). Moreover, he affirmed Jeff. Co. DHR's conclusion that Plaintiff failed to perform her job properly by approving inaccurate purchase orders. (*Id.* at 14). The ALJ's order did not discuss whether there was enough evidence to support the charges of insubordination. (*See id.* at 13-14). Nor did it discuss the propriety of the charge for failing to staff the TPR case in August 2013 in accordance with McClintock's instructions. (*See id.*). The ALJ concluded, "[b]ased on [Plaintiff's] failure to adhere to DHR on-call procedures, [Plaintiff's] approval of inaccurate purchase orders, and considering [Plaintiff's] previous discipline, the totality of the evidence supports DHR's decision to dismiss [Plaintiff] from employment." (*Id.*). In a footnote, the ALJ dismissed Plaintiff's argument of disparate treatment based on the lack of punishment given to other employees who had approved late purchase orders because Plaintiff also had been charged with violating a safety rule. (*Id.* at 13-14 n. 14). The ALJ found no mitigating factors and recommended upholding the dismissal. (*Id.* at 15). In June 2014, the Personnel Board affirmed Plaintiff's termination from Jeff. Co. DHR. (Doc. # 62-15 at 1, 4). It adopted the ALJ's findings of fact and conclusions of law. (*Id.* at 3).

### E.    Plaintiff's EEOC Charge

Plaintiff submitted her EEOC charge against DHR on February 19, 2014. (Doc. # 54-21 at 3). In this charge, she complained that DHR had discriminated against her because of her race and disability. (*Id.*) Moreover, she alleged that DHR retaliated against her. (*Id.*). She denied

the claim that she was discharged for violating the Personnel Board's rules. (*Id.*). She contended that DHR "retaliated against [her] for protesting activities in violation of Title VII." (*Id.*). According to Plaintiff, "[a] similarly situated white employee who committed the same [offenses] is still employed [by DHR]." (*Id.*). The charge asserted that DHR's conduct occurred between December 9, 2013 (the date of McClintock's charge letter) and February 12, 2014 (the date of McClintock's termination letter). (*Id.*). Plaintiff has not indicated that she filed a position statement with the EEOC with additional charges.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of*

*Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one

party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III. Analysis

Defendants present eight arguments in support of their summary judgment motion. First, they argue that Plaintiff has failed to present a *prima facie* case to support her race discrimination or sex discrimination claims. (Doc. # 53 at 18-20). Second, they insist that Jeff. Co. DHR terminated Plaintiff for a legitimate, non-discriminatory reason – her violations of Jeff. Co. DHR's rules. (*Id.* at 21-22). Third, they claim that Plaintiff's Title VII failure to promote claims fail because a majority of program supervisor and higher management positions at Jeff. Co. DHR have been held by African-American women. (*Id.* at 22). Fourth, they contest the claim that Plaintiff suffered from a hostile work environment because Plaintiff has not identified any "threatening behavior, over[t] acts of racism, or any actual harassment" that occurred during her employment at Jeff. Co. DHR. (*Id.* at 22-24). Fifth, they argue that Plaintiff has not shown a *prima facie* case of retaliation because (1) her EEOC charge was filed after she was terminated, (2) her written rebuttals contained no allegations of unlawful discrimination, and (3) the decisionmakers at Jeff. Co. DHR did not know about Plaintiff's testimony during internal investigations at Jeff. Co. DHR, even if Plaintiff reported concerns about racism during those investigations. (*Id.* at 24-25). Sixth, Defendants argue that Plaintiff presents no triable claim under the Fourteenth Amendment and 42 U.S.C. § 1983 because she was terminated for legitimate reasons and was afforded "extraordinary due process both prior to and after the termination." (*Id.* at 26-27) (emphasis omitted). Seventh, Defendants insist that Plaintiff's sex

discrimination claims should be dismissed because they are beyond the scope of her EEOC charge. (*Id.* at 27). Finally, Defendants claim that Plaintiff had access to adequate state remedies by challenging her termination in Alabama state court. (*Id.* at 27-28). The court begins its discussion with the question of which claims were exhausted through the administrative process.

> **A.** **Plaintiff's Sex Discrimination, Failure to Promote, and Hostile Work Environment Claims are Due to be Dismissed for Failure to Exhaust Administrative Remedies**

The initial question here is which claims were raised and exhausted in Plaintiff's February 2014 EEOC charge. Defendants insist that the sex discrimination claims are outside the scope of the EEOC charge. (*Id.* at 27). While the court agrees with that assessment of the charge, the court also finds that Plaintiff's failure to promote and hostile work environment claims are due to be dismissed on this basis as well.

When a plaintiff wishes to pursue an action under Title VII, she must first exhaust her administrative remedies—that is, she must file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1); *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). Furthermore, the scope of a Title VII judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Gregory*, 355 F.3d at 1280. Claims in a Title VII judicial complaint may "'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint." *Id.* at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). But, the charges in a judicial complaint must be "like or related to, or [grow] out of, the allegations contained in [a plaintiff's] EEOC charge." *Id.* at 1280.

Plaintiff's EEOC charge alleged that Defendants wrongfully terminated her because of her race, her disability, and because she engaged in protected conduct under Title VII. (Doc. # 54-21 at 3). Plaintiff did not indicate that her claims were based on sex discrimination. (*Id.*). Indeed, nothing in the charge hinted that Ala. DHR or Jeff. Co. DHR discriminated against Plaintiff in any fashion because of her sex. And, a sex discrimination claim is not likely to grow out of a race discrimination claim where the plaintiff refers to a comparator by race but not by sex. (*See id.*) ("A similarly situated white employee who committed the same [offenses] is still employed."). Therefore, the court finds that a reasonable investigation into the charge Plaintiff filed would not encompass the sex discrimination claims she seeks to raise in this action. *See Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224-25 (11th Cir. 2000) (affirming the denial of a retaliation claim premised upon the plaintiff's complaints about national origin discrimination where his EEOC charge presented retaliation claims premised upon complaints about alleged disability discrimination).

Likewise, Plaintiff's charge did not discuss the promotions Jeff. Co. DHR denied to her. (Doc. # 54-21 at 3). In fact, the charge explicitly discussed the termination, denied DHR's rationale for the termination, and referenced a comparator who was "still employed." (*Id.*). And, the charge stated that the discrimination occurred during a two month period in 2013 and 2014, whereas the denied promotions presented in the Rule 56 record occurred outside of that time period. (*Id.*). Therefore, Plaintiff's Title VII failure to promote claims are also due to be dismissed for failure to exhaust administrative remedies because a reasonable investigation into the EEOC charge would not have encompassed discriminatory or retaliatory refusals to promote. *See Chanda*, 234 F.3d at 1224-25.

Finally, Plaintiff's hostile work environment claim bears no reasonable relationship to the termination claims presented in her EEOC charge. Plaintiff's charge does not allege a series of discriminatory or racially-charged incidents, nor does it indicate that Plaintiff left DHR due to an ongoing series of conduct. (Doc. # 54-21 at 3). While a reasonable investigation into a retaliatory discharge could delve into the discriminatory acts behind a plaintiff's protected conduct, Plaintiff has never indicated that she complained about a hostile work environment. And, again, the two month time frame referenced in the EEOC charge would not lead a reasonable investigator to conclude that Plaintiff intended to complain about a hostile work environment. Therefore, this claim is due to be dismissed for failure to exhaust administrative remedies.

To be clear, none of the claims subject to dismissal for failure to exhaust administrative remedies arise from conduct occurring after the filing of the EEOC charge. *Cf. Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 413-14 (5th Cir. Unit A Aug. 1981) (concluding that a plaintiff did not need to file an EEOC charge to maintain a retaliation claim based on conduct occurring after an EEOC charge had been filed). Nor do these claims rely on facts asserted in the charge that would have placed a reasonable EEOC investigator on notice that Plaintiff intended to present additional bases of discrimination, notwithstanding her failure to mark the "sex" box on the EEOC charge and her failure to explicitly discuss specific failed promotion requests or the hostile work environment. Thus, this case is distinguishable from decisions such as *Gregory*, in which the Eleventh Circuit found sufficient facts in a plaintiff's EEOC charge about race and sex discrimination to trigger an investigation into retaliation. *See* 355 F.3d at 1280.

For the reasons explained above, Plaintiff's Title VII sex discrimination, failure to promote, and hostile work environment claims are due to be dismissed for failure to exhaust

administrative remedies.  Nevertheless, in the interest of comprehensiveness, the court will also discuss these claims in more detail below as part of its Rule 56 analysis, along with the exhausted claims.

**B.**     **Plaintiff Has Failed to Present a *Prima Facie* Case of Discriminatory Failure to Promote**

Typically, Title VII discrimination and retaliation claims that rely on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See also Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) ("A plaintiff typically makes a case of discrimination through indirect evidence using the burden-shifting framework set out in *McDonnell Douglas* . . . .").  A plaintiff presents a *prima facie* failure to promote case by showing: (1) he or she is a member of a protected class; (2) he or she was qualified and applied for the promotion; (3) he or she was rejected despite being qualified; and (4) "other equally or less qualified employees who were not members of the protected class were promoted." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).

 After a careful review of the complaint and Plaintiff's response to the motion for summary judgment, the court finds that Plaintiff has failed to present a *prima facie* case in relation to her failure to promote claim.  She has not identified the promotions that she (1) was qualified for and (2) applied for during the limitations period for this suit.  Her complaint broadly alleges that she was "systematically" denied promotions granted to white, male, or younger employees at Jeff. Co. DHR.  (Doc. # 37 at ¶ 15).  Yet, the complaint does not identify which promotions she was denied or who received those promotions.  (*See id.* at ¶¶ 15, 30-41).  Likewise, Plaintiff's opposition brief states that "[s]everal of the persons selected for the promotional positions Scott was denied were white [and/or] males, or had never engaged in

protected activity[,] placing them outside her protected class during all times relevant to [her] claims." (Doc. # 61 at 27-28). Yet, her brief does not identify the promotions she applied for, the dates she applied for those promotions, or the individuals who received those promotions. (*See id.* at 27-32). Her brief refers to her response to paragraph 26 of Defendants' statement of undisputed facts, which in turn refers to Document # 62-18. (*See id.* at 13-14, 28). But the exhibit cited by Plaintiff is a register for the service supervisor promotion she received in 2001.[12] (*See* Doc. # 62-18). Because Plaintiff has not specified which promotions she applied for, she has not presented a *prima facie* case of discriminatory failure to promote, and Defendants are entitled to summary judgment on all of these claims.[13]

To be sure, a review of the Rule 56 record reveals documents from promotions that Plaintiff applied for from 2006 to 2011.[14] (Doc. # 62-17). It appears that Plaintiff was qualified for those promotions because she tied for the top ranking amongst applicants for some of the positions. (*See id.* at 7-8, 17). However, Plaintiff does not argue that these denied promotions form the basis of her Title VII failure to promote claims. (*See* Doc. # 61 at 27-32). Moreover, none of these denied promotions can form the basis of a triable Title VII discrimination claim

---

[12] The court understands Plaintiff's assertion that the promotion registers used by Jeff. Co. DHR indicated the applicants' race. (*See* Doc. # 62-18) (labeling some applicants with a number 1 and other applicants with a number 2). This is not enough, though, to meet the *prima facie* case for discriminatory failure to promote articulated in cases such as *Wilson*.

[13] In addition, as Plaintiff has not identified the specific promotion applications that form the basis of her Title VII failure to promote claims, the court cannot determine whether the individual(s) promoted to the position(s) were equally qualified or less qualified. *Wilson*, 376 F.3d at 1089.

[14] Defendants have submitted a chart of all employees hired or promoted to program manager, program supervisor, or assistant director positions at Jeff. Co. DHR from April 2012 to September 2016. (Doc. # 54-4 at 7). Plaintiff claims that this chart, along with the other charts attached to McClintock's affidavit, should be stricken because they are not records kept in the normal course of business and have not been authenticated. (Doc. # 61 at 32-33). Plaintiff also objects to the court's consideration of the exhibits at the Rule 56 stage in her response to Defendants' statement of undisputed facts. (*Id.* at 14-15). The court need not decide the evidentiary issues presented by Plaintiff because they do not affect the result of this case. Specifically, the court need not consider the chart with the employees promoted from 2012 to 2016 because Plaintiff has not claimed that she applied for any of these promotions.

because all of them occurred more than 180 days before Plaintiff filed her EEOC charge in February 2014. *See* 42 U.S.C. § 2000e-5(e)(1). *See also Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1287 (M.D. Ala. 2016) (noting that discrete acts of discrimination must be presented in an EEOC charge within 180 days and that a failed promotion application is a discrete act).

Because Plaintiff has not presented a *prima facie* case of discriminatory failure to promote, Defendants are entitled to summary judgment on all of her Title VII failure to promote claims in this action.[15]

### C. Plaintiff has Not Presented a *Prima Facie* Case of Discriminatory Termination and has Not Rebutted Defendants' Legitimate, Non-Discriminatory Reason for Terminating Her

In a circumstantial evidence case, a plaintiff may establish a *prima facie* case by showing: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) her employer treated her less favorably than someone outside her protected class. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842-43 (11th Cir. 2000) (citing *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997)). Alternatively, with respect to the fourth prong, a plaintiff may demonstrate that she was replaced by someone outside her protected class. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

The employees identified as comparators by a Title VII plaintiff must be similarly situated in all relevant respects. *Wilson*, 376 F.3d at 1091; *Holifield*, 115 F.3d at 1562. The Eleventh Circuit has held this means that "[t]he comparator must be nearly identical to the plaintiff." *Wilson*, 376 F.3d at 1091; *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999).

---

[15] The court is not aware of any argument presented by Defendants that they had a legitimate, non-discriminatory reason for failing to promote Plaintiff to any particular position. Because the vast majority of the Rule 56 record focuses on Plaintiff's termination, rather than the denied promotions, the court has foregone determining whether Defendants had a legitimate, non-discriminatory reason for not promoting Plaintiff to a program supervisor or program specialist position.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia,* 171 F.3d at 1368 (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)). Thus, we require "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* Even if a plaintiff and a comparator are similar in some respects, differences in their overall record may render them not "similarly situated" for purposes of establishing a *prima facie* case. *See, e.g., Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316-19 (11th Cir. 2003) (the employee and comparator who committed the same act were not similarly situated because the comparator's overall record was better).

Once a *prima facie* case is established, an employer has the burden to articulate a legitimate, nondiscriminatory reason for the employment decision. *Wilson,* 376 F.3d at 1087. This burden involves no credibility determination, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993), and has been characterized as "exceedingly light," *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). After an employer articulates one or more legitimate, nondiscriminatory reasons for the employment action, a plaintiff must show that the proffered reason was a pretext for illegal discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason, but must "meet that reason head on and rebut it." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the

defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Id.* at 1024-25.

As an initial matter, Plaintiff has not pointed to any direct evidence of discrimination by Jeff. Co. DHR or Ala. DHR. Plaintiff appears to argue that she has done so by pointing to her assertion that she worked at Jeff. Co. DHR as a supervisor for more than twelve years, often performed at an "Exceeds Standards" level, and received discipline for an incident occurring during a period of FMLA leave.[16] (Doc. # 61 at 29-30). This argument misunderstands the definition and scope of direct evidence. Evidence of discrimination is only classified as "direct evidence" if the trier of fact without further need for inference could conclude from the evidence -- that is, the statement itself -- that the defendant more likely than not discriminated against the plaintiff on the basis of a protected characteristic when making a contested employment decision. *Wright v. Southland Corp.*, 187 F.3d 1287, 1306 (11th Cir. 1999). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson*, 376 F.3d at 1086 (citations and internal quotation marks omitted). Nothing in the Rule 56 record comes close to a statement that Defendants intended to terminate Plaintiff because of her race or sex or anything else that could be considered direct evidence of discrimination.

Nor can Plaintiff avoid summary judgment based on any circumstantial evidence she has proffered. The fatal flaw in Plaintiff's Title VII termination claims is that she cannot identify a comparator who was treated less favorably than her. In her affidavit, Plaintiff identifies several supervisors of a different race and/or sex who were not terminated after supervising cases in which a child died. (Doc. # 64-1 at 8) (referring to Catherine Denard, Doug Heath, Brandon

---

[16] To be clear, Plaintiff has not claimed in her Third Amended Complaint that Defendants unlawfully retaliated against her for taking leave under the Family and Medical Leave Act. (*See generally* Doc. # 37).

Hardin, Tracy Eubanks, Toni Dollar, and Danny Williams). Even assuming the circumstances in each of these tragedies was similar to any incident involving Plaintiff, she has not provided the court with evidence about these supervisors' disciplinary records. Therefore, as the court cannot determine whether these supervisors had a similar quantity or quality of prior discipline as compared to Plaintiff, they cannot be considered appropriate comparators. *Maniccia,* 171 F.3d at 1368. For example, McClintock testified that Toni Dollar, a white female supervisor, received a suspension for a violation of safety rules in a child death case. (McClintock Deposition at 71-73). But Dollar is not an appropriate comparator for Plaintiff's *prima facie* discrimination case because the Rule 56 record contains no evidence of how many disciplinary actions Dollar received before the incident for which she was suspended. In contrast, the Rule 56 record contains clear evidence of the discipline Plaintiff received before 2013 and in 2013.

Likewise, Russell is not an appropriate comparator to Plaintiff for several reasons, even though both Plaintiff and Russell were involved in one of the incidents that led to Plaintiff's termination.[17] First, Russell is the same race and sex as Plaintiff, so she is *within* the same protected classes as Plaintiff for purposes of the claims presented in this case. (Scott Deposition at 303-04). Second, and in any event, Russell was not similarly situated to Plaintiff because she did not have a history of disciplinary actions. (*See* Russell Deposition at 31-32) (affirming that the counseling was the first discipline she had received in her seven years working for Jeff. Co. DHR).[18] Third, Russell was a social worker, while Plaintiff was a service supervisor. (*See* Scott Deposition at 19; Hearing Transcript at 65). An employer can reasonably impose less severe punishment on a lower-level employee than a higher-level employee following the same incident

---

[17] To be clear, Plaintiff has not argued in her summary judgment brief that Russell is a comparator. In the interest of completeness, the court is addressing why she cannot be considered a comparator.

[18] A transcript of Russell's deposition is located in Document 54-19.

because higher-level employees usually are held to higher standards. *Thompson v. Tyson Foods, Inc.*, 939 F. Supp. 2d 1356, 1367 (M.D. Ga. 2013). And, finally, Plaintiff has not argued that an individual outside of her protected class entered the service supervisor position after she was terminated. *Cf. Maynard*, 342 F.3d at 1289. Because Plaintiff has not identified a comparator outside of her protected class who was treated more favorably, Defendants are entitled to summary judgment for her Title VII termination claims.

Alternatively, even if Plaintiff was able to present a *prima facie* case of discriminatory termination (and, to be clear, she has not), Defendants also are entitled to summary judgment because Plaintiff has not shown that their legitimate, non-discriminatory reason for terminating her is a pretext for discrimination. Defendants have explained that Plaintiff was terminated because she violated Jeff. Co. DHR's policies when she failed to direct Russell to travel to the hospital for an in-person contact and failed to ensure the accuracy of purchase orders. (Doc. # 53 at 21). Plaintiff challenges this non-discriminatory reason on three bases. First, she argues that she did not violate any Jeff. Co. DHR policy through her actions on November 29th. (Doc. # 61 at 34). Second, she contends that Russell decided to not make an in-person contact and acted within Jeff. Co. DHR's policies when doing so. (*Id.*). Finally, she complains that Jeff. Co. DHR misapplied its personnel rules when applying progressive discipline based on disciplinary actions that occurred over a ten year period. (*Id.* at 3). None of these arguments provide a triable issue of pretext because they are contradicted by the Rule 56 record.

Plaintiff's contention that she did not violate Jeff. Co. DHR's policy cuts no ice. Indeed, Plaintiff admitted during the pre-termination administrative hearing that her conduct violated the written Jeff. Co. DHR task statement form she signed the weekend before the incident. (Hearing Transcript at 67-68). Moreover, the task statement form belies Plaintiff's assertion that Russell

was the ultimate party responsible for ensuring that an in-person contact occurred. The form directed the supervisor to follow up with the on call social worker "to ensure that child contact was made and appropriate steps were taken to ensure child safety." (Doc. # 54-6 at 140).

Finally, with regard to Plaintiff's third objection, she has not presented sufficient evidence for a reasonable jury to agree with her theory that Jeff. Co. DHR's own personnel policies barred it from considering discipline issued in an earlier appraisal period when disciplining an employee for a violation. Indeed, the personnel policies entered into the record during the pre-termination hearing place no temporal limit on prior discipline that may be considered by a supervisor when choosing appropriate discipline. (*See* Doc. # 54-3 at 32-56). Those policies state that a supervisor's application of the progressive discipline policy could be affected by "[t]he fact that an employee's behavior has been fully competent since the last occurrence of discipline for an extended period of time." (*Id.* at 46). Plaintiff avers in an affidavit that "discipline does not carry over from one rating period to the next." (Doc. # 64-1 at 1). But, Plaintiff's affidavit purports to state a term in Jeff. Co. DHR's policies, and Jeff. Co. DHR's policies in the Rule 56 record speak for themselves. The court disregards Plaintiff's attempt to present legal arguments about the proper interpretation of Jeff. Co. DHR's policies through an affidavit. *Cf. PNC Bank, Nat'l Ass'n v. Liberty Mut. Ins. Co.*, 912 F. Supp. 169, 176-77 (W.D. Pa.) (disregarding averments in an affidavit from an attorney about "the correct interpretation of the applicable law and attempts to construe testimony in the light most favorable to Liberty Mutual"), *aff'd without opinion*, 101 F.3d 691 (3d Cir. 1996).

Finally, Plaintiff's reliance upon *Long v. Alabama Department of Human Resources*, 650 F. App'x 957 (11th Cir. 2016), is misplaced. (Doc. # 64-1 at 1-2). In *Long*, the panel noted that a factual dispute existed about whether a score deduction for a reprimand should have been

applied to an employee's appraisal in the period where the conduct at issue occurred or the period during which Ala. DHR issued the reprimand. 650 F. App'x at 960 n. 3. Nothing in the *Long* opinion addressed whether a DHR supervisor may consider discipline issued more than 12 months before the conduct at issue in deciding the proper method of discipline. Accordingly, Plaintiff has offered no basis upon which a reasonable jury could reject Defendants' assertion that she was terminated because of her violations of work policies and her disciplinary history. Defendants are due to be granted summary judgment for Plaintiff's Title VII termination claims.

### D. Plaintiff has Not Made a *Prima Facie* Case that Defendants Unlawfully Retaliated Against Her Based on Protected Conduct

Defendants claim that Plaintiff cannot show a causal connection between any of the protected conduct she engaged in and an adverse action taken against her. (Doc. # 53 at 24-26). After careful review of the Rule 56 record, the court agrees.

Title VII's anti-retaliation provision provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. *Holifield*, 115 F.3d at 1566.

"Title VII's protections against retaliation do not create an aegis or shield guarding against any and all retaliatory wrongs." *Cooley v. Great S. Wood Preserving, Inc*., 2004 WL 5570664, at *6 (M.D. Ala. Sept. 30, 2004). To show that he or she engaged in expression

protected under Title VII by complaining about unlawful employment practices, a plaintiff must show that he or she had "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). "A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960 (italics in original).

A plaintiff establishes a causal connection by showing that the relevant decisionmaker was "aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)). Of course, the plaintiff bears the burden of persuasion to proffer evidence sufficient to permit a reasonable fact finder to conclude that the retaliatory animus was the but-for cause of the adverse action. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Bass v. Bd. of Cty. Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). However, a lapse in time of several months, in the absence of other evidence tending to show causation, is insufficient. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (noting that a three to four month delay between the protected conduct and the adverse action is enough to preclude a causal connection based solely on temporal proximity).

Here, Plaintiff claims that she engaged in protected conduct when she (1) wrote rebuttals to unfavorable performance appraisals and disciplinary actions, (2) complained about McClintock's racism during an investigation, and (3) filed her EEOC charge. (*See* Scott Deposition at 129, 139-40, 147-55).[19] Plaintiff has submitted three written rebuttals into the Rule 56 record that challenge the factual basis for a negative performance appraisal or disciplinary action.[20] (*See* Doc. # 62-4). The court has examined these rebuttals and finds no complaint of racism, sexism, disability discrimination, retaliation, or a discriminatory hostile work environment presented against any Jeff. Co. DHR employee. Therefore, the rebuttals were not complaints against unlawful employment activity protected under Title VII and cannot form the basis of a triable retaliation claim.[21] *Holifield*, 115 F.3d at 1566.

Plaintiff has not presented a *prima facie* case of retaliation premised on her purported complaints of discrimination during an internal investigation at Jeff. Co. DHR. This is so because the undisputed evidence in the Rule 56 record does not show that Plaintiff's complaints were protected under Title VII, that McClintock knew of Plaintiff's verbal complaints, or that the

[19] Plaintiff's summary judgment brief does not specify the protected conduct that caused Defendants to retaliate against her in violation of Title VII. (*See* Doc. # 61 at 32-36). Her complaint alleges that Defendants retaliated against her following complaints to her supervisors and submission of the EEOC charge. (Doc. # 37 at ¶ 43). Besides Plaintiff's EEOC charge, the court is unsure what incidents Plaintiff relies on to show that she engaged in conduct protected by Title VII. Nevertheless, because Defendants construe Plaintiff's testimony to contain three types of possible protected conduct, the court will examine all of the conduct identified by Defendants to determine whether Plaintiff has a triable Title VII retaliation claim. (*See* Doc. # 53 at 24-25).

[20] During her deposition, Plaintiff testified that she had submitted rebuttals that were not in Jeff. Co. DHR's personnel file. (Scott Deposition at 136-37). She has not filed any other rebuttals with the court, though, and the court can only examine the rebuttals in the record.

[21] Additionally, the court doubts that Plaintiff could establish a causal connection between Plaintiff's rebuttals and her termination in February 2014. The final rebuttal in the record was submitted to Jeff. Co. DHR nearly six months before the charge letter and nearly eight months before Plaintiff's termination. Because the final rebuttal and the termination occurred several months apart, Plaintiff cannot rely on the temporal proximity between them alone to show a causal connection. *Higdon*, 393 F.3d at 1220. While it appears that McCormick had access to the rebuttals when deciding whether to terminate Plaintiff (since they were submitted into the record during the pre-termination hearing), the record does not indicate that McCormick considered them when deciding to terminate Plaintiff. Having said that, the court need not decide whether the rebuttals had any influence on Jeff. Co. DHR's decision to terminate Plaintiff because none of the rebuttals constitute protected activity.

complaints were causally connected to the termination. In her deposition, Plaintiff provided no detail about the complaints presented to the investigators. (*See* Scott Deposition at 155). Therefore, the court cannot review whether Plaintiff had an objectively reasonable basis for the complaints of discrimination she made against Jeff. Co. DHR. Therefore, assuming that Plaintiff complained about discrimination during an internal investigation and that she believed in good faith that Jeff. Co. DHR had engaged in unlawful employment conduct, Plaintiff has presented insufficient testimony about her statements during the investigation to determine whether her beliefs about Jeff. Co. DHR's unlawful conduct were objectively reasonable. *Little*, 103 F.3d at 960. Thus, Plaintiff has not shown that the verbal complaints of discrimination were protected by Title VII.

Likewise, Plaintiff has not presented evidence from which a reasonable jury could find a causal connection between her verbal complaints of discrimination and her termination. First, she has presented no evidence whatsoever that McClintock or any other decisionmaker at Jeff. Co. DHR knew about her earlier complaints of discrimination. *Shannon*, 292 F.3d at 716. Indeed, McClintock has expressly denied that she knew of any testimony given during that investigation. (Doc. # 54-4 at 4).

> The State DHR office conducted a totally independent investigation and audit and was regarding things that occurred before I became Director. All testimony that was given as part of that investigation was kept confidential from JCDHR employees, including me, so that a thorough and accurate investigation and audit could be done. I have never been told what anyone said during that investigation. . . . Ms. Scott's statements were entirely unknown to me or anyone else at the JCDHR office and could not have been motivation behind her termination.

(*Id.*).

Second, Plaintiff has not specified when she made the verbal complaints of discrimination. (*See* Scott Deposition at 152) (stating that the interview occurred in 2011, 2012,

or 2013). Thus, no reasonable jury could find that Plaintiff's complaints of discrimination occurred within one to three months of the December 2013 charge letter or the February 2014 termination and, thus, could not find a causal connection between the statements and the termination based on temporal proximity alone. *Cf. Higdon*, 393 F.3d at 1221 (holding that a three month delay between a plaintiff's protected conduct and an adverse action does not allow a reasonable inference of a causal relationship between the two). Accordingly, Plaintiff cannot establish a *prima facie* Title VII retaliation claim based on her verbal complaints of discrimination during a DHR investigation.

Finally, Plaintiff cannot present a *prima facie* case of retaliation committed by Jeff. Co. DHR following her EEOC charge because it was filed with the EEOC *after* she was terminated. Plaintiff filed her EEOC charge on February 19, 2014, seven days after McClintock terminated her. (Docs. # 54-5 at 117; 54-21 at 3). Plaintiff's retaliation claim is premised on the "verbal harassment, excessive scrutiny and observation, lowering of her performance appraisal, and unfair discipline" she suffered. (Doc. # 37 at ¶ 43). Plainly, none of this conduct could have occurred after she was terminated by Jeff. Co. DHR. Therefore, Plaintiff cannot show a causal connection between her EEOC charge and any alleged adverse action taken by Jeff. Co. DHR or Ala. DHR. While the court recognizes that a Title VII cause of action exists for post-employment retaliation in limited circumstances, Plaintiff's Title VII retaliation claim has been premised on pre-termination and termination-related adverse actions.

For the reasons explained above, Plaintiff cannot show a *prima facie* case of retaliation under Title VII for any of the alleged protected conduct at issue in this case. Therefore, Defendants are due to be granted summary judgment on Plaintiff's Title VII retaliation claim.

**E.     Plaintiff has Not Presented Sufficient Evidence of Severe or Pervasive Harassment to Support a Title VII Hostile Work Environment Claim**

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Five elements must be shown for a successful hostile work environment claim: (1) the plaintiff is a member of a protected group; (2) he or she "has been subject to unwelcome harassment"; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment "was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) the employer is responsible for the abusive working environment "under either a theory of vicarious or of direct liability."  *Id.*

Defendants argue that any harassment suffered by the plaintiff on account of her race or sex was not severe or pervasive enough to support a Title VII claim.  (Doc. # 53 at 22-23).  The harassment suffered by a plaintiff must meet both an objective and subjective standard to support a hostile work environment claim.  *Miller*, 277 F.3d at 1276.  That is, the harassment must create an environment that a reasonable person would find hostile or abusive, and the plaintiff must subjectively perceive that the environment is hostile or abusive.  *Id.*  To evaluate the objective severity of alleged harassment, the court considers: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  *Id.*  "These four components are viewed together; for instance, infrequent conduct will not necessarily preclude a claim as a matter of law, particularly if the

conduct is sufficiently severe, threatening, and/or interferes with an employee's job." *Shaling v. UPS Ground Freight*, 202 F. Supp. 3d 1283, 1292 (N.D. Ala. 2016). "Teasing, offhand comments, and isolated incidents do not constitute discriminatory changes in the terms and conditions of employment." *Jones v. City of Lakeland*, 318 F. App'x 730, 735 (11th Cir. 2008). Discrete acts of discriminatory conduct such as refused promotions or transfers, standing alone, cannot form the basis of a hostile work environment claim. *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012). But, discrete acts can be considered as part of a hostile work environment. *Id.* at 1313.

Here, the harassment alleged by Plaintiff was not objectively severe or pervasive enough to support a hostile work environment claim. Plaintiff has not proffered any "overtly racist" statement by McClintock, nor has she recounted any use of racially charged epithets or derogatory terms by Jeff. Co. DHR employees during her employment. (*See* Scott Deposition at 293). Indeed, in her summary judgment brief, Plaintiff's hostile work environment claim is only supported by the discipline she occasionally received from 2002 to 2014. (Doc. # 61 at 36). In essence, her hostile work environment claim is based on discrete acts of allegedly discriminatory conduct that generally cannot form the basis of a hostile work environment claim.[22] *See Gowski*, 682 F.3d at 1312. In addition, the incidents of allegedly discriminatory discipline during Plaintiff's fourteen years of employment at Jeff. Co. DHR were isolated incidents that did not result in a change in the conditions of her workplace. *Cf. Jones*, 318 F. App'x at 735. For these reasons, the court finds no genuine issue of fact regarding whether Plaintiff faced objectively severe or pervasive harassment based on her gender or race that changed the conditions of her

---

[22] Plaintiff's interrogatory responses reflect that her hostile work environment claim is based on the discipline she received at Jeff. Co. DHR. When Defendants asked her to identify the acts of verbal harassment, unfair discipline, and unfair scrutiny, Plaintiff discussed the January 2012 warning and the February 2014 termination. (Doc. # 54-7 at 6).

workplace. Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

**F.      Plaintiff's Equal Protection Claims Against Ala. DHR and Jeff. Co. DHR are Due to be Dismissed Due to Eleventh Amendment Immunity**

Defendants argue that Plaintiff's Fourteenth Amendment claims fail because she received due process prior to and after her termination from Jeff. Co. DHR. (Doc. # 53 at 26-27). The court concludes, though, that Plaintiff's Fourteenth Amendment claims are due to be dismissed for another reason: Ala. DHR and Jeff. Co. DHR are entitled to Eleventh Amendment immunity for the claims.

Plaintiff's complaint raises a claim against Defendants for violating her Fourteenth Amendment equal protection right to "equal employment opportunity." (Doc. # 37 at ¶ 51). Section 1983 of Title 42 "provides a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution." *Smiley v. Ala. Dep't of Transp.*, 778 F. Supp. 2d 1283, 1297 (M.D. Ala. 2011). "States and state officials acting in their official capacities cannot be sued for money damages under § 1983 because they are not considered to be 'persons' for the purposes of the statute." *Carr v. Bd. of Regents of Univ. Sys. of Ga.*, 249 F. App'x 146, 148 (11th Cir. 2007) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Likewise, the Eleventh Amendment bars suit against an "arm of the State," including "agents and instrumentalities of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (*en banc*) (plurality opinion). An Alabama state agency is entirely immune from suit under Section 1983 because Congress has not abrogated Eleventh Amendment immunity for Section 1983 actions and the state of Alabama has not waived its Eleventh Amendment immunity. *Strickland v. Bd. of Trustees of Univ. of Ala.*, 2014 WL 6749019, at *2

(N.D. Ala. Dec. 1, 2014) (citing *Will*, 491 U.S. at 66, and *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

Here, Plaintiff seeks relief from Defendants Ala. DHR and Jeff. Co. DHR pursuant to Section 1983 for alleged violations of the Fourteenth Amendment. (Doc. # 37 at 15-17). Ala. DHR and Jeff. Co. DHR are arms of the state which qualify for Eleventh Amendment immunity from Section 1983 claims. *E.g.*, *Poindexter v. Dep't of Human Res.*, 946 F. Supp. 2d 1278, 1282, 1284 (M.D. Ala. 2013) (concluding that Ala. DHR is a state agency); *Muhammad v. Bethel-Muhammad*, 2012 WL 1854676, at *2 (S.D. Ala. May 21, 2012) (concluding that Ala. DHR and Dallas County Department of Human Resources are arms of the state); *Rizo v. Ala. Dep't of Human Res.*, 228 F. App'x 832, 834-35 (11th Cir. 2007) (affirming the dismissal of an Americans with Disabilities Act claim against Ala. DHR on the ground of Eleventh Amendment immunity). Accordingly, Defendants are entitled to summary judgment on Plaintiff's Section 1983 claim. (*See* also Doc. # 35 at 4-5) (explaining that Defendants Ala. DHR and Jeff. Co. DHR are entitled to Eleventh Amendment immunity with regard to the Section 1983 claims for monetary relief).

Plaintiff does not raise a Section 1983 claim against any individual officer employed by Defendants. Plaintiff did not oppose Defendants' motion to strike the individual Defendants from this case. (Doc. # 39). Accordingly, the court dismissed the claims against Nancy Buckner, McClintock, and Hall with prejudice. (Doc. # 40). In any event, such a defendant would be entitled to summary judgment on the merits of Plaintiff's Section 1983 claim. "[D]iscrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII . . . are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th

Cir. 2009).  For the reasons discussed above, Plaintiff has not presented a triable discriminatory termination claim, discriminatory failure to promote claim, hostile work environment claim, or retaliation claim under Title VII.  Therefore, she would be unable to present a triable Section 1983 discrimination claim on the same facts.

## IV.    Conclusion

In conclusion, Defendants are due to be granted summary judgment for Plaintiff's Title VII sex discrimination, discriminatory failure to promote, and hostile work environment claims because those claims would not have reasonably grown out of an investigation into the claims presented in Plaintiff's February 2014 EEOC charge.  In the alternative, Defendants are entitled to summary judgment for Plaintiff's Title VII failure to promote claims because she has not presented a *prima facie* case of discrimination for any specific promotion.  Defendants are entitled to summary judgment on Plaintiff's Title VII discriminatory termination claims because Plaintiff has not identified a similarly situated comparator, and a reasonable jury could not credit her arguments that Defendants' legitimate, non-discriminatory reasons for the termination are pretextual.  Plaintiff has not presented a *prima facie* case of Title VII retaliation because (a) her written rebuttals do not qualify as protected conduct, (b) the court cannot meaningfully analyze her verbal complains of discrimination on the Rule 56 record, and (c) she filed her EEOC charge after the adverse actions presented in this litigation.  Defendants are due to be granted summary judgment for Plaintiff's Title VII hostile work environment claim because she has not presented evidence from which a reasonable jury could find objectively severe or pervasive harassment.  Finally, Defendants are due to receive Eleventh Amendment immunity for Plaintiff's Section 1983 claims because they are both state agencies.

Defendants' motion for summary judgment (Doc. # 52) is due to be granted. An order consistent with this opinion will be entered.

**DONE** and **ORDERED** this June 7, 2017.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE